UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CONCRETE AND CEMENT ADDITIVES ANTITRUST LITIGATION | |
| This documents Relates To: ALL ACTIONS | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _01/02/2025_

24-md-3097 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

On December 20, 2024, the parties filed dueling letters concerning the scope of discovery to be taken during the pendency of Defendants' motions to dismiss. Dkt. Nos. 258–259. The letters state that after meeting and conferring, Plaintiffs agreed to narrow their priority requests for production to three categories of documents: (1) documents produced to foreign regulators (Request Nos. 1–4); (2) transactional data (Request Nos. 6–7, 10); and (3) pricing information (Request Nos. 78–79). *Id.* Defendants argue that Plaintiffs' pursuit of the first and third categories of documents sought is presently barred by the existing discovery stay and that in any event, all of Plaintiffs' requested discovery should be stayed pending the Court's ruling on the motions to dismiss. Dkt. No. 258. Plaintiffs argue that the current stay does not bar production of documents responsive to any of the three categories and that Defendants fail to show good cause for a stay of discovery. Dkt. No. 259. They thus move to compel production of documents responsive to Request Nos. 1–4, 6–7, 10, and 78–79. *Id.* The Court first addresses the scope of the existing discovery stay and then turns to Defendants' request for a stay of discovery beyond the present stay.

On October 18, 2024, the United States, in its role as intervenor, submitted a proposed joint stipulation and order regarding a limited stay of discovery. Dkt. No. 203. The proposed stipulation

and order was signed by counsel for all Plaintiffs and Defendants and states that "Plaintiffs, Defendants served as of the entry of this stipulation, and the United States . . . have met and conferred regarding the parameters and scope of a limited stay of discovery." *Id.* The Court so-ordered the joint stipulation and order on October 21, 2024. Dkt. No. 206 ("Stipulation"). The Stipulation contains five paragraphs relevant to the question whether the Stipulation bars any of the discovery Plaintiffs now seek:

- Paragraph 1 states that the Stipulation shall be in effect until December 31, 2025, and that "[n]o discovery shall be conducted under the Federal Rules of Civil Procedure, except as set forth herein." *Id.* ¶ 1.

- Paragraph 2 states that "[n]o discovery shall be conducted under the Federal Rules of Civil Procedure that refers or relates to" the United States' investigation concerning cement and concrete additives and admixtures ("CCAs") "including any party's or witness's communications with the Unites States or with the grand jury investigating CCAs." *Id.* ¶ 2.

- Paragraph 3 states that "[u]ntil July 1, 2025, no discovery shall be produced under the Federal Rules of Civil Procedure that refers or relates to any alleged understandings, agreements, meetings, or communications between competitors relating to the sale of CCAs." *Id.* ¶ 3.

- Paragraph 4 states that "[n]othing in this Stipulation prevents or limits in any way" the parties' ability to take certain actions connected with discovery including, *inter alia*, the ability to serve discovery that does not violate Paragraph 2, to discuss and agree upon custodial and non-custodial data sources and search terms, to preserve documents and electronically stored information.

- Paragraph 6 is titled "Permissible Subjects" and states that "[s]ubject to paragraphs 2, 3, and 7,[1] full discovery of the following categories will be permitted . . . subject to the Court's Scheduling Order (ECF No. 105 ¶ 5(b)–(c) [('CMO No. 1')])."  *Id.* ¶ 6.  The Stipulation lists six Permissible Subjects including "[d]iscovery relevant to the Court's personal jurisdiction over any Defendant who contests this Court's personal jurisdiction," "[d]iscovery from any non-party" subject to a few exceptions, "[d]iscovery of centrally maintained transactional and statistical data," and "[d]iscovery of any party's organizational structure," among others.  *Id.*

The parties contest whether the list of Permissible Subjects within Paragraph 6 is exhaustive such that matters not enumerated (or included within Paragraph 4) are barred while the Stipulation is in effect.  Dkt No. 258 at 1; Dkt. No. 259 at 1.  Plaintiffs contend that Paragraph 6 merely provides examples, Dkt. No. 259 at 1, while Defendants contend that Paragraph 6 provides the complete list of currently discoverable subjects.  The Stipulation is not the model of clarity, but Defendants have the better reading of the Stipulation.

"Stipulations 'reflect a contract between the parties' and are, therefore, generally construed according to 'ordinary rules of contract interpretation.'" *CAML Ghana Ltd. v. Westchester Res. Ltd.*, 2015 WL 405647, at *4 (S.D.N.Y. Jan. 30, 2015) (quoting *Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007)); *accord United States v. Nee*, 573 F. App'x 37, 39 (2d Cir. 2014) (summary order); *Cameron Int'l Trading Co. v. Hawk Importers, Inc.*, 501 F. App'x 36, 38 (2d Cir. 2012) (summary order); 105 N.Y. Jur.2d Trial § 230 *Stipulation as Constituting Contract* (2009).  "Second Circuit case law supports applying the law of the forum to stipulations entered in federal courts." *CAML Ghana*, 2015 WL 405647, at *4 (collecting cases).

---

[1] Paragraph 7 pertains to permissible depositions and is not relevant to the instant requests for the production of documents.  *Id.* ¶ 7.

3

Plaintiffs' interpretation would stay only the discovery stated in Paragraphs 2 and 3, thereby rendering the entirety of Paragraph 6 mere surplusage—"a construction that cannot be countenanced under [New York] principles of contract interpretation." *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 143 (2d Cir. 2017) (quoting *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1154 (N.Y. 2016)). Absent Paragraph 6, the Stipulation could be read to only stay discovery of the materials restricted by Paragraphs 2 and 3. However, Paragraph 6 must be given effect. *See Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 556 F. Supp. 3d 301, 307 (S.D.N.Y. 2021). The Stipulation does not itself state that the Permissible Subjects enumerated in Paragraph 6 are mere examples of the discovery which may be sought or that those subjects are listed simply for the avoidance of doubt. *See Clifton v. Vista Comp. Servs.*, *LLC*, 2002 WL 1585550, at *6 (S.D.N.Y. July 16, 2002) ("When the language of the contract is unambiguous, the Court should not add language to change the meaning." (citing *Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000))).[2]

Conversely, Defendants' reading gives effect to every paragraph. *See In re Neuman*, 55 B.R. 702, 705 (S.D.N.Y. 1985) ("The stipulation should be interpreted within the four corners of the document" and "[t]he preferred interpretation gives effect to every part of the contract."). Pursuant to Defendants' interpretation, Paragraph 1 provides that the Stipulation shall be in effect through the end of 2025; Paragraph 3 identifies documents that may not be produced prior to July 1, 2025; Paragraph 4 clarifies that certain activities related to discovery may still proceed; and Paragraph 6 enumerates certain discovery subjects which may proceed. Paragraph 6 thus helps give definition to Paragraph 3. Even if centrally maintained transactional data and jurisdictional

---

[2] Courts should be particularly wary of reading in the phrase "*inter alia*" where it is not expressly stated. "Under the doctrine of *expressio unius est exclusion alterious*, when certain persons or categories are specified in a contract, an intention to exclude all others may be inferred." *Gurney's Inn Resort & Spa Ltd. v. Benjamin*, 878 F. Supp. 2d 411, 425 (E.D.N.Y. 2012) (Bianco, J.) (citation omitted).

discovery might be read to "relate" to an alleged unlawful understanding (for the alleged illegal agreement pertains to transactions in CCAs), Paragraph 6 makes clear that Paragraph 3 is not to be given its broadest reading.  Individual transactional data is permitted to be discovered even if the discovery of such data from each of the Defendants might provide circumstantial evidence of the alleged conspiracy and therefore relate to it.  At the same time, however, because Paragraph 6 governs only subject to Paragraphs 2 and 3, discovery of the Permissible Subjects is not permitted with respect to any specific document that relates to the United States' investigation or that refers overtly to an agreement or communication between competitors relating to the sale of CCAs.  *See MemoryTen, Inc. v. Silicon Mountain Holdings*, 92 F. Supp. 3d 176, 185 (S.D.N.Y. 2015) (explaining that the phrase "subject to" generally indicates that the contractual provision is subordinate to the provision to which it is subjected).

The discovery Plaintiffs seek is therefore stayed except to the extent it falls within one of the Permissible Subjects and does not refer or relate to the investigation being conducted by the United States concerning CCAs or to any alleged understandings, agreements, meetings, or communications between competitors relating to the sale of CCAs.  Discovery of documents relating to the investigation may not be conducted until December 31, 2025, and documents relating to alleged understandings and agreements may not be produced until July 1, 2025 (although they may be requested with production due on or after July 1, 2025).  Defendants do not dispute that discovery of the second category of documents—transactional data—is not barred by the Stipulation which includes, as a Permissible Subject, "centrally maintained transactional and statistical data."  Dkt. No. 258 at 1; Stipulation ¶ 6(c).  Plaintiffs argue that the third category of documents—pricing data—are also discoverable because they are "necessarily encompassed within" that same category.  Dkt. No. 259 at 1.  But the requests themselves belie Plaintiffs'

argument.    Request No. 78 seeks documents "[c]oncerning any price increase or shipping surcharge [the responding Defendant] discussed, considered, planned, adopted, implemented, or imposed for CCAs or Precursor Chemicals."    Dkt. No. 259-1 at 34.    Request No. 79 seeks documents "[c]oncerning pricing guidelines, policies, methods, procedures, practices, formulas, factors, benchmarks, indexes floors, or limits regarding CCAs or Precursor Chemicals."    *Id.* Although the price of certain transactions may necessarily be included within the transactional data, and therefore presently susceptible to discovery, Plaintiffs advance no argument as to how, for example, discussions regarding considered but unimplemented price increases or pricing procedures would be encompassed within the transactional data.    To the extent the pricing data that Plaintiffs seek is not transactional data, the Stipulation bars production of documents responsive to those requests at this time.

Plaintiffs next argue that the Stipulation does not block the first category of documents—documents produced to foreign regulators—because "the order incorporates CMO No. 1 ¶ 5(b) which contemplated the production of foreign regulator documents."    Dkt. No. 259 at 1. Paragraph 6 of the Stipulation states that "full discovery" of the Permissible Subjects is permitted "subject to" Paragraph 5(b)–(c) of CMO No. 1.    *See MemoryTen,* , 92 F. Supp. 3d at 185. However, CMO No. 1 does not exempt documents produced to foreign regulators from the later stipulated-to stay, as Paragraph 5(b)–(c) of CMO No. 1 merely sets forth the schedule for fact discovery.    Paragraph 5(b) states that Plaintiffs may serve requests for production of documents, "including but not limited to requests for production of documents produced to, or collected by government agencies" beginning 35 days from the filing of the Consolidated Class Action Complaints.    CMO No. 1 ¶ 5(b).    Paragraph 5(c) states that "[a]dditional fact discovery shall open on the day the Court rules on any Responsive Motions, if any Responsive Motions are denied in

whole or in part." *Id.* ¶ 5(c).  Subjecting Paragraph 6 of the Stipulation to those subparagraphs of CMO No. 1 therefore permits discovery of the Permissible Subject only on the timetable ordered by CMO No. 1 ¶ 5(b)–(c).  It does not tacitly create another Permissible Subject.[3]  Plaintiffs do not otherwise argue that the foreign regulator documents they are seeking fall within a Permissible Subject.

Next, Defendants argue that even if the stipulated stay does not bar discovery of the transactional documents Plaintiffs seek, "good cause exists to deny this burdensome discovery." "A motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act [('PSLRA')]."  *Hong Leong Fin. Ltd. (Sing.) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013).  The fact that "defendants filed an early dispositive motion does not in and of itself give rise to justification to warrant a stay." *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 359 (E.D.N.Y. 1991).  However, upon a showing of "good cause," the court may grant a motion to stay discovery pending decision on a motion to dismiss.  *See* Fed. R. Civ. P. 16(b)(4) (a discovery schedule "may be modified only for good cause and with the judge's consent"); Fed. R. Civ. P. 26(c)–(d); *see also Ass'n Fe y Allegria v. Republic of Ecuador*, 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999) ("Together, these provisions enable the district court to stay discovery where resolution of a preliminary motion may dispose of the entire action.").  "Courts consider: '(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion.'"  *Hong Leong*, 297 F.R.D. at 72 (quoting *Brooks v. Macy's Inc.*, 2010 WL 5297756, at *2 (S.D.N.Y. Dec. 21, 2010)).

---

[3] As further indication that the CMO No. 1 does not create a seventh Permissible Subject, the "documents produced to, or collected by government agencies" would undoubtedly include documents related to the United States' investigation which are expressly impermissible subjects pursuant to Paragraph 2 of the Stipulation.

Defendants' motions to dismiss make strong arguments for dismissal including that Plaintiffs fail to state a claim under Section 1 of the Sherman Act because they do not allege direct evidence of a conspiracy or parallel conduct and that Plaintiffs engage in impermissible group pleading with respect to certain Defendants.  Dkt. Nos. 224, 226, 228, 230.  However, a strong motion to dismiss does not necessarily warrant a stay of discovery where strong arguments are also available on the other side.  *See Robbins v. Candy Digital Inc.*, 2024 WL 2221362, at *1 (S.D.N.Y. May 15, 2024); *Guiffre v. Maxwell*, 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016).  Plaintiffs have not yet filed their oppositions to the motions to dismiss and, particularly in light of the multitudinous state law claims at issue, the Court cannot fully ascertain whether the strength of the motions weighs in favor of a stay.  *See, e.g.*, Dkt. No. 226.

Defendants do not argue that Plaintiffs' request for the transactional data is overbroad.  Plaintiffs state that the requested data is directly relevant to Plaintiffs' price-fixing allegations (and presumably also to damages).  Dkt. No. 259 at 3; *see Robbins*, 2024 WL 2221362, at *2.  Defendants do not dispute that and merely state that the Court's ruling on the motions to dismiss could narrow Plaintiff's request in unspecified ways.  Dkt. No. 258 at 3.

Defendants argue that "seeking transaction-level data with nearly 20 different data points per transaction for 17 entities" is onerous.  *Id*.  But discovery in a multi-district litigation involving multiple defendants will necessarily require work by multiple entities.  The question thus is not whether the document requests will impose burdens on several parties.  By definition, they will do so.  The question more properly is whether the requests will be burdensome as to each individual Defendant.  Defendants identify nothing about the transaction-level data that would be unduly expensive, time-intensive, or disruptive for any given Defendant to produce.  "[G]eneralized objections of burden are insufficient to justify denying the demanded discovery."  *Zhulinska v.*

*Niyazov L. Grp., P.C.*, 2021 WL 5281115, at *5 (E.D.N.Y. Nov. 12, 2021); *see New York v. Mountain Tobacco Co.*, 2015 WL 3455080, at *15 (E.D.N.Y. May 29, 2015); *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 51–52 (E.D.N.Y. 2018).

Plaintiffs do not identify any unfair prejudice they would face if the transactional data was stayed. Dkt. No. 259 at 3 (arguing that a delay in receiving the foreign regulator documents would be prejudicial but not identifying any prejudice with regard to the other two categories of documents).[4] "However, lack of prejudice alone does not merit a stay." *Bennett v. Cuomo*, 2023 WL 2021560, at *5 (S.D.N.Y. Feb. 15, 2023). "To hold otherwise would be contrary to the general presumption that a motion to dismiss does not stay discovery save in a case under the Private Securities Litigation Reform Act." *Bertrand v. Dep't of Educ., Archdiocese of N.Y.*, 2023 WL 2776015, at *3 (S.D.N.Y. Apr. 4, 2023).

Ultimately, Defendants do not show good cause for a stay of discovery with respect to the transactional data. Plaintiffs are not prohibited from seeking discovery of those documents, or any other materials not stayed by the Stipulation.

The Clerk of Court is respectfully directed to close Dkt. No. 259.

SO ORDERED.

Dated: January 2, 2025
    New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[4] Plaintiffs cite *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) (Chin, J.) in support of their argument that staying discovery of the foreign regulator documents would prejudice Plaintiffs. Dkt. No. 259 at 3. That case is readily distinguishable as it involved a mandatory stay pursuant to the PSLRA but the "consolidated cases include[d] ERISA and derivative actions, as to which the PSLRA stay d[id] not apply." *In re Bank of Am.*, 2009 WL 4796169 at *3.